UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIE PALMER,

    Petitioner,

v.                                                      CASE NO. 6:15-cv-2011-Orl-28DCI

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

This cause is before the Court on a Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to Petition ("Response," Doc. 15) in accordance with this Court's instructions. Petitioner filed a Reply (Doc. 16) and an Amended Reply. (Doc. 18). Petitioner alleges four claims for relief. For the reasons set forth herein, the Petition is due to be denied.

    I.    PROCEDURAL HISTORY

Petitioner was charged by amended information with robbery with a deadly weapon (Count One) and grand theft (Count Two). (Doc. 15-1 at 7). After a jury trial, Petitioner was convicted as charged. (*Id.* at 497-98). The trial court sentenced Petitioner to a term of life imprisonment for Count One as a prison releasee reoffender and to a concurrent five-year sentence for Count Two. (*Id.* at 518-19). Petitioner appealed, and the Fifth District Court of Appeal ("Fifth DCA") affirmed *per curiam*. (*Id.* at 768).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the

Florida Rules of Criminal Procedure. (*Id.* at 583-600). The trial court summarily denied the motion. (*Id.* at 603-10). The Fifth DCA affirmed *per curiam*. (*Id.* at 610). Petitioner subsequently filed a second Rule 3.850 motion, which the trial court denied as successive. (*Id.* at 779-86; 790-91). The Fifth DCA affirmed *per curiam*. (*Id.* at 873).

## II. LEGAL STANDARDS

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.* Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

3

performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant,* 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary,* 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,*

---

[1] In *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

4

13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Claim One

Petitioner alleges trial counsel was ineffective for failing to request a jury instruction on abandonment. (Doc. 1 at 4). Petitioner contends that he abandoned his attempt to commit robbery, and had the jury been properly instructed, he would have been acquitted. (*Id.*). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied the claim, concluding that the evidence did not support a special jury instruction on abandonment. (Doc. 15-1 at 605). The Fifth DCA affirmed *per curiam*. (*Id.* at 768).

Mercy Morgan ("Morgan"), an employee of a Wal-Mart store in Viera, Florida, testified that she observed Petitioner select various types of merchandise including shirts, pants, underwear, a tote bag, and pillows and place them in his shopping cart (Doc. 15-1 at 74-75). Petitioner did not pay for the items, and instead he passed the point of sales and tried to exit the store. (*Id.* at 75-76). Morgan requested the assistance of another employee, and called the Brevard County Sheriff's Office. (*Id.* at 76).

Morgan then approached Petitioner as he exited the door, and she identified herself as security. (*Id.* at 77). Petitioner walked backwards into the store, and employee David Fournier ("Fournier") requested that Petitioner follow them to Morgan's office. (*Id.* at 77-78). Morgan stated that Petitioner did not abandon the items, appeared angry, and had his hand on the cart as he tried to leave. (*Id.* at 119). Morgan observed a black object

5

with silver in Petitioner's hand and believed it was a knife. (*Id.* at 79). Morgan was very scared, and stepped out of Petitioner's way. (*Id.* at 80-82). Petitioner subsequently left the store and drove away. (*Id.* at 88-89).

Fournier testified that he went to the entrance of the store and waited until Petitioner had passed the points of sale, at which time he approached Petitioner and stopped his shopping cart. (*Id.* at 147-48). Petitioner attempted to leave the store and appeared aggravated. (*Id.* at 149). Morgan yelled to Fournier that Petitioner had a knife, and Petitioner said to him, "You better move." (*Id.* at 150). Fournier then observed a black folding knife in Petitioner's hand. (*Id.* at 150-51). Fournier testified that Petitioner held the knife out, and Fournier perceived the statement, "You better move" as a threat. (*Id.* at 151). Fournier immediately backed away and was in fear. (*Id.* at 151-52). Petitioner then exited the store. (*Id.* at 153).

Florida law provides that a when requesting a special jury instruction, a defendant must demonstrate "(1) the special instruction is supported by the evidence; (2) the standard instruction does not adequately cover the theory of defense; and (3) the special instruction is a correct statement of the law and not misleading or confusing." *Peterson v. State*, 24 So. 3d 686, 689 (Fla. 2d DCA 2009). Petitioner contends that he was entitled to a special jury instruction on abandonment because he abandoned the stolen property before he used force to leave the scene of the crime. Florida courts have held that an abandonment defense and jury instruction applies when a defendant has used force after abandoning stolen property and thus has broken the chain between the taking and the

6

use of force. *Rockmore v. State*, 140 So. 3d 979, 982-83 (Fla. 2014) (noting that the theft of property and use of force must be a continuous series of acts or events); *Peterson*, 24 So. 3d at 688 (citations omitted).

In this case, Petitioner attempted to leave the Wal-Mart store with property he had not paid for; however, he was stopped by two employees. The trial testimony reflects that Petitioner had his hand on the shopping cart and attempted to leave the store without paying for the items in the cart. When approached by Fournier and Morgan, Petitioner verbally threatened Fournier while holding a knife. The evidence does not indicate that there was a break in the chain between the taking and the use of force. Instead, the theft, threat, and attempted use of force constituted a continuous series of acts or events. Therefore, defense counsel did not act deficiently and counsel's failure to request an instruction on abandonment did not result in prejudice because Petitioner was not entitled to such an instruction. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim one is denied pursuant to § 2254(d).

### B. Claim Two

Petitioner argues that trial counsel was ineffective for failing to call Karen Mills ("Mills") as a witness. (Doc. 1 at 7). Petitioner states that Mills would have testified that the total of the stolen merchandise was not $310.27 because two pillows had been counted twice, and therefore, the total of the merchandise was under $300. (*Id.*). Petitioner asserts that if this evidence had been presented, he would not have been convicted of grand theft.

(*Id.*). Petitioner raised this claim in his Rule 3.850 motion, and the trial court denied the claim pursuant to *Strickland*, noting that two witnesses testified regarding the total price of the stolen merchandise. (Doc. 15- at 606-07). The Fifth DCA affirmed *per curiam*. (*Id.* at 768).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Dottin v. Sec'y Dep't of Corr.*, No. 8:07-cv-884-T-27MAP, 2010 WL 376639, at *6 (M.D. Fla. Sept. 16, 2010). Petitioner's claim is speculative because he has not presented an affidavit from Mills. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain this claim of ineffective assistance of counsel.

Alternatively, the Court concludes that this claim is without merit. Deputy Thomas Walter ("Deputy Walter") testified that he responded to the scene of the crime, where he inventoried each stolen item (Doc. 15-1 at 250). Deputy Walter stated that a Wal-Mart employee provided him with a sales receipt to determine the total price or amount of the stolen items. (*Id.*). Deputy Walter testified that he went through each stolen item and checked it off the receipt to ensure that the items matched. (*Id.* at 251). Additionally, Morgan testified regarding the accuracy of the receipt and the total amount of the stolen property. (*Id.* at 89, 121).

Petitioner has not demonstrated that counsel's failure to call Mills as a witness resulted in prejudice. Petitioner merely speculates that Mills would have testified that the receipt and total price of the stolen items was inaccurate. *See Tejeda v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel). Petitioner has not provided the Court with any evidence demonstrating that two pillows were counted twice in the total price of the stolen items. A reasonable probability does not exist that but for counsel's actions, the result of the proceeding would have been different. Accordingly, claim two is denied pursuant to § 2254(d).

### C. Claim Three

Petitioner asserts that trial counsel was ineffective for advising him not to testify. (Doc. 1 at 8). Petitioner states that counsel told him not to testify because "the State would eat him up on the stand and there was nothing [he] could testify to in this case that counsel had not said." (*Id.*). In his Reply, Petitioner also contends that counsel improperly told him that if he testified, the jury would hear about the nature of his prior convictions. (Doc. 18 at 15). Petitioner states that he would have testified that the alleged knife Morgan and Fournier saw was "simply a key chain pouch" and he had no intent to harm anyone. (*Id.* at 17-18). Petitioner raised this claim in his Rule 3.850 motion, and the trial court summarily denied relief pursuant to *Strickland*. (Doc. 15-1 at 608). The Fifth DCA affirmed *per curiam*. (*Id.* at 768).

Criminal defendants have a right to testify on their own behalf. *Rock v. Arkansas*,

9

483 U.S. 44, 50-51 (1987); *Harris v. New York*, 401 U.S. 222, 230 (1971). To protect a defendant's right to testify, defense counsel must inform the defendant that he has a right to testify or not to testify, the strategic implication of each choice, and that the defendant must ultimately decide for himself whether to testify. *See Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992).

The trial court discussed with Petitioner his right to testify, and Petitioner stated that he understood his rights. (Doc. 15-1 at 300-03). The trial court gave Petitioner additional time to speak with his attorney about the matter, after which Petitioner told the court that he was waiving his right to testify. (*Id.* at 304-05). Even assuming that defense counsel improperly advised Petitioner regarding his rights, he cannot demonstrate prejudice.

Morgan and Fournier both testified that Petitioner wielded a knife. (Doc. 15-1 at 79, 150-51). Further, Deputy Walter testified that he collected a black pocketknife that another officer had found on Petitioner when he was arrested. (*Id.* at 244). The pocketknife was offered into evidence and reviewed by the jury. (*Id.* at 246). Consequently, even if Petitioner had testified that he did not threaten Fournier with a knife and merely held a key chain pouch, a reasonable probability does not exist that he would have been acquitted in light of the evidence presented. The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, claim three is denied pursuant to § 2254(d).

D.  Claim Four

Petitioner alleges that the trial court erred by denying his motion for judgment of acquittal with regard to the robbery with a deadly weapon charge. (Doc. 1 at 10). Respondents argue that this claim is unexhausted. (Doc. 15 at 7-9).

Pursuant to the AEDPA, federal courts are precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999). In order to satisfy the exhaustion requirement a "petitioner must 'fairly present[ ]' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Isaac v. Augusta SMP Warden*, 470 F. App'x 816, 818 (11th Cir. 2012) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). A petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

The instant claim was raised on direct appeal in appellate counsel's *Anders*[2] brief and Petitioner's *pro se* initial brief (Doc. 15-1 at 532-48, 557-74). However, these briefs did not cite to any federal case law or the federal constitutional provisions. (*Id.*). In the *Anders* brief, appellate counsel merely relied upon state law, and therefore, did not apprise the state court of the federal constitutional issue. Similarly, Petitioner's *pro se* brief merely

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

11

argued that under Florida law, he had abandoned the stolen property before he used force. (*Id.* at 565-67). Therefore, this claim is unexhausted. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457-58 (11th Cir. 2015) (holding that a habeas petitioner failed to exhaust his sufficiency of the evidence claim because he did not cite to any federal cases or federal constitutional provisions and only relied upon Florida case law to argue his claim).

Moreover, the Court is precluded from considering this claim because it would be procedurally defaulted if Petitioner returned to state court. "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Id.* at 736. Petitioner could not return to the state court to raise this ground because he has already filed a direct appeal. Thus, Petitioner's claim is procedurally defaulted.

Procedural default may be excused only in two narrow circumstances: if a petitioner can show (1) cause and prejudice or (2) actual innocence. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). Petitioner states that appellate counsel's failure to raise the federal constitutional basis of the claim amounts to cause for the procedural default. (Doc. 18 at 4). A claim of ineffective assistance of appellate counsel can be cause for procedural default if that claim also was exhausted in the state court. *See Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013); *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846, 847-48 (11th Cir. 2008) (*citing Edwards*

*v. Carpenter*, 529 U.S. 446, 450-51 (2000)). However, Petitioner did not raise this specific claim in the state court. Therefore, this is a not basis to overcome the procedural default.

Petitioner has neither alleged nor shown any cause or prejudice to excuse the procedural default. Likewise, Petitioner has not demonstrate that he is actually innocent. Accordingly, the Court is procedurally barred from reviewing this claim.

Alternatively, the Court concludes that Petitioner's claim fails on the merits. To convict Petitioner of robbery with a deadly weapon, the State had to prove that (1) Petitioner took money or property from the person or custody of another, (2) the taking was with the intent to permanently or temporarily deprive the person of the money or property, (3) the property had some value; (4) in the course of the taking, Petitioner used force, violence, assault, or fear, and (5) Petitioner carried a deadly weapon. § 812.13(1) and (2)(a), Fla. Stat. The robbery statutes defines the phrase "in the course of the taking" to mean acts occurring prior to, contemporaneous with, or subsequent to the taking if the taking and the act "constitute a continuous series of acts or events." § 812.13(3)(b), Fla. Stat. Furthermore, an act is deemed to have been committed "in the course of the taking" if it occurs in flight after the attempt or commission. § 812.13(3)(a), Fla. Stat.

Petitioner essentially argues that he did not use force during or subsequent to the taking of the property and asserts that he abandoned his attempt to steal the items. (Doc. 18 at 19-20). Petitioner also states that there is no evidence that he used a weapon to commit the crime. As the Court noted *supra*, Petitioner's act of force was committed subsequent to the taking of the Wal-Mart property; however, the taking and the threat of

13

force or violence constituted a continuous act. *See Rockmore*, 140 So. 3d at 982. Additionally, Morgan and Fournier testified that Petitioner wielded a knife, and Fournier stated that Petitioner threatened him. Police officers found a pocketknife on Petitioner's person when he was arrested.

Based on the testimony presented at trial, there was sufficient evidence for the trial court to present the case to the jury and for the jury to determine that Petitioner committed robbery with a deadly weapon. Upon viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner guilty. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trial court did not err by denying Petitioner's motion for judgment of acquittal. Accordingly, claim four is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate

of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." (*Id.*); *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

The Court concludes that Petitioner has not made the requisite showing in these circumstances. Petitioner is not entitled to a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 26 day of April, 2018.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record
Unrepresented Party

15